ELISHA R. WILSON, Respondent, v. BENJAMIN F. WILSON, Appellant.

EVIDENCE. RULE CONCERNING. REVERSAL OF JUDGMENT ON GROUND OF IMPROPER ADMISSION OF. AGENCY. PRINCIPAL AND AGENT.

The legal rule is, that, where incompetent evidence is received, to which the proper exception is taken, the judgment must be reversed, unless it appears from the case, that such evidence could not have injured the party. (*Worrall* v. *Parmelee*, 1 Comst. 519.)

Evidence to prove, that the defendant had, at some previous time, made a false statement concerning a fact not in issue at the trial, and concerning which there was no conflicting testimony given by the defendant, which evidence could have no other effect than to discredit the defendant's testimony, not otherwise impeached, was erroneously admitted, and the judgment against the defendant must be reversed for that reason alone.

The judgment in this case being reversed on the ground of the admission of incompetent evidence to the injury of the defendant, the real issue between the parties, which involved the question of agency, and the relations of principal and agent, and which, on the trial, was chiefly a question of fact, has here but a secondary place. The principle enunciated, where the fact of agency is found, is familiar, and is thus stated in the opinion of GROVER, J.

An agent is bound to exert his care and skill in making as good a bargain as practicable for his principal, and he cannot retain for himself any of the profits or advantages of a contract made by him, without the consent of the principal, given with a full knowledge of all the facts. (Dunlap's Paley's Agency, p. 32, following *Moore* v. *Moore*, 1 Seld. 256.)|

*Sawyer & Russell*, for the respondent.

THE facts of the case are as follows:

Henry Van Rensselaer was the proprietor of certain lands in St. Lawrence county, and in April, 1858, advertised said lands to be sold at public auction, on the 16th day of June following. The plaintiff and the defendant desired, each to purchase a piece of said land. The defendant knew that plaintiff was intending to attend said auction for the purpose of purchasing said piece of land. In the forepart of May, 1858, defendant came to plaintiff's house and proposed to join with plaintiff in the purchase of the lands which they respectively wanted, stating that he thought they could be purchased cheaper then than at the auction; that he was

intimate with Van Rensselaer and with Guest, his agent, and that he could buy the lands cheaper than plaintiff or any one else could, and offered to negotiate the purchase from Van Rensselaer of the land for plaintiff, stating that he would charge nothing for his services, and that plantiff should have the land at the same price that he bargained with Van Rensselaer for it, and that he would bargain for it at the lowest price possible. Plaintiff accepted the offer of defendant to negotiate the purchase for him, limiting defendant to $15 per acre as the highest price he was in any event to pay for the land. Defendant then left, went to Van Rensselaer, made a bargain with him for the purchase of the land at $10 per acre, and took a contract in his own name at that price. He then returned to the plaintiff, concealed from him that he had taken such contract, but falsely stated that he had made a verbal bargain with Van Rensselaer for the purchase of the land at $15 per acre, and that that was the lowest price at which he could purchase it. Plaintiff replied that it was too much, but if defendant had agreed to pay that price for it he would pay it. Defendant replied that he could not buy it a farthing less, and that he had verbally closed a bargain for it. Defendant soon after procured a surveyor, by name of Tate, and had the land surveyed off into two lots, one containing $50\frac{47}{100}$ acres (the land which he had taken the contract of and about five acres in addition), and the other containing $26\frac{57}{100}$ acres. The defendant claimed the choice of these two lots on the ground that he had been at the trouble of making the bargain for plaintiff. To this plaintiff assented and the defendant chose the smaller lot. In the forepart of June, defendant again called upon plantiff and then received from him $367.35 to pay upon the land which he said he had bargained for, and to obtain a contract for plaintiff. With this money defendant again went to Van Rensselaer, surrendered the contract which he had previously taken and had a contract made from Van Rensselaer to plaintiff for the $50\frac{47}{100}$ acre lot as surveyed by Tate, at ten dollars per acre, paid thereon of the money which he had received from plaintiff, $125, which was indorsed on the contract. The residue of

the money, $242.35, he put in his own pocket.   This contract he brought to plaintiff, and when asked why all the money had not been indorsed, falsely stated that he paid $15 per acre for the land, but that Van Rensselaer owed him for digging a ditch, and that by agreement with him the other $5 per acre had been applied to extinguish that indebtedness. No such agreement had been made, and no money applied in that way.   Van Rensselaer owed him nothing, the price agreed upon for the land with defendant was $10 per acre, just the same price that Van Rensselaer would have sold it to the plaintiff, had he applied in person to purchase it.

I. The facts establish the relation of principal and agent between the plaintiff and the defendant, and the case presents no question but the law applicable to such relation.

The defendant having undertaken to act for the plaintiff in purchasing the land, plaintiff was entitled to his best judgment and exertions in his behalf. (Dunlap's Paley on Agency, *passim; Moore* v. *Moore,* 1 Seld. 261.)

The fact that defendant volunteered his services as agent and acted gratuitously, did not absolve him from the duty of fidelity to his principal. (*Conkey* v. *Bond,* 36 N. Y. 429; *Gillett* v. *Peppercorne,* 3 Beav. 78.)

Being an agent he could not act for his own benefit in relation to the subject-matter of the agency, to wit, the sale and purchase of the land. (*Moore* v. *Moore,* 1 Seld. 256; *Bruce* v. *Davenport,* 36 Barb. 351; *McDonald* v. *Lord,* 2 Robert. S. C. 10.)

II. The fact that the defendant secretly took a contract in his own name for a part of the land and afterward surrendered it and caused one to be executed to the plaintiff, did not change the relation of the parties, nor release the agent from his duty to his principal.

Even if defendant sold his own property he was bound to sell it at the same price he purchased it for of Van Rensselaer, to wit, $10 per acre.   He could not make a profit out of his principal. (Dunlap's Paley on Agency, 37 and notes; *Benson* v. *Heathorn,* 1 Yo. and Coll. C. C. 346; *Conkey* v. *Bond,* 34 Barb. 277; 36 N. Y. 429.)

III. There is no material variation between the allegations of the complaint and the case made on the trial.

There was evidence to sustain all the findings of fact by the referee; his finding is conclusive. That this court will not review the facts has been too often held to require the citing of cases.

IV. The case, in short, as established by the evidence and found by the referee, is this: Defendant offered himself as a gratutitous agent to the plaintiff to purchase for him a certain lot of land; plaintiff accepted him as such, and, to enable the defendant to make the purchase, put into his hands $367.35. Defendant made the purchase for plaintiff, and in so doing used of the money $125, and no more; the residue, $242.35, he kept himself, lied to the plaintiff as to the price paid, and refused to pay it over or to account for it to plaintiff on its being demanded. There is no law that will uphold such a transaction.

V. There were no exceptions taken on the trial of sufficient weight to reverse judgment.

1. Concerning questions asked Miss Wilson as to declaration of defendant to her that he paid $15 per acre. The evidence was properly admitted.

(*a*) It was good for the purpose of showing the *quo animo*, the fraudulent design with which he acted. It was a statement made to the sister of the man he was trying to defraud, who lived with her brother and to whom defendant well knew she would communicate what he said. Fraudulent statements made to third parties are admissible, if bearing at all upon the transaction, to show the intent with which the defendant acted. (*Hall* v. *Naylor*, 18 N. Y. 588.)

(*b*) It became good for the purpose of impeaching and discrediting defendant's testimony afterward offered, by showing that he had made statements about price of land which were false in fact.

(*c*) Plaintiff swears, that defendant told him sometime previous to time he brought contract that he had verbally closed contract with Van Rensselaer, and that he had to pay $15 per acre. Defendant in no place contradicts this, only

testifying, that, on the 15th of June, when he brought contract, he did not then tell him so. The question, then, could not, even if inadmissible, have injured defendant, for the evidence of plaintiff, on the question whether defendant told him he paid $15 per acre, which the evidence of Miss Wilson was intended to corroborate, stands clear and uncontradicted, and therefore her answer either way would have had no effect.

VI. As to various exceptions to referee's allowance of parol testimony to show consideration of the contracts, it is sufficient to say, that the consideration of every conveyance is open to such testimony to explain or vary that expressed by writing. (*McCrea* v. *Purmot*, 16 Wend. 240.)

More especially is it so when, as in the present case, direct fraud is alleged in regard to the very consideration of the contract.

VII. The question asked Chapin as to conversation with plaintiff was properly excluded.

1. It was leading. The question asked plaintiff was not sufficiently specific as to person, time or place, in order to impeach plaintiff upon it. (*Pendleton* v. *Em. Stone Dress. Co.*, 19 N. Y. 13.)

2. It was for contradiction of plaintiff upon a collateral issue and could not be allowed. (Stark. on Ev. p. 134.)

3. Whether a question is leading is within discretion of referee, and his decision is conclusive. (*Walker* v. *Dunspaugh*, 20 N. Y. 170.)

The judgment should be affirmed.

*Myers & Magone*, for the appellant.

I. The facts as found by the referee, do not sustain the allegations in the complaint. The complaint alleges that the defendant agreed with plaintiff to purchase for and on behalf of said plaintiff, of Van Rensselaer, a fifty acre lot, without charge or compensation. That defendant did purchase "the said fifty acre lot" at $10 an acre, and obtained a contract therefor at that price, and on presenting the contract to defendant falsely pretended that he had paid to Van Rensse-

laer thereon $242.35, by applying the same to Van Rensselaer's credit, as between him and plaintiff.

The facts as found, are: That on 19th May, the defendant procured, in his own name and right, a contract from Van Rensselaer for lot No. 4, of $45\frac{53}{100}$ acres, which appears by defendant's evidence to have been consummated before his conversation with plaintiff. On the 25th May, defendant paid plaintiff $330, and took a receipt therefor, "to procure a contract or deed of Mr. Van Rensselaer for fifty acres of land at $15 per acre."

On the 12th June, defendant in his own name and right, purchased by contract, of Van Rensselaer, lot No. 9, containing thirty-four acres.

On the 7th day of July, defendant employed a surveyor to resurvey the lots, dividing No. 9, so that adding a part thereof to No. 4, a lot would be produced of $50\frac{47}{100}$ acres, adjoining plaintiff's farm.

That about the middle of July defendant surrendered to Van Rensselaer his previous contract, and took for himself, a contract for the remainder of No. 9, $26\frac{57}{100}$ acres, and got a contract from Van Rensselaer, running to the plaintiff, dated June 12, 1858, for the $50\frac{47}{100}$ acres, as surveyed by defendant, for $514.70, with $125 indorsed thereon, representing to plaintiff that the remainder of the price agreed on, of $15 an acre, had been applied on his claim against Van Rensselaer, for making a ditch, which the referee finds to be untrue.

This is a case entirely different from that made in the complaint. In the complaint the defendant is supposed, while, in fact, acting as plaintiff's agent, to have deceived him as to the amount paid, and defrauded him out of $242.35.

In the case, as found, he is represented as having concealed the fact from plaintiff; that he was himself the beneficial owner of the land, and by allowing plaintiff to suppose Van Rensselaer the owner and that he asked $15 an acre, part of which defendant had paid, induced plaintiff to account to him for the land at $15 an acre.

This is a fatal variance between the allegations and the proofs upon which the plaintiff was not entitled to recover.

"The rule is explicit and absolute that a party must recover in chancery," and *a fortiori* at law, according to the case made in his bill, or not at all, "*secundum allegata,*" as well as *probata.* (*Thomas* v. *Austin,* 4 Barb. S. C. 265, 272.)

II. The facts, as found by the referee, do not make out a cause of action, legal or equitable, against the defendant.

There is no allegation in the complaint, nor is the fact found by the referee, that the plaintiff paid more than the value of the land.

Neither is it alleged, or found as a fact, that the plaintiff could have purchased the land from Van Rennselaer at less than $15 an acre.

Neither is it alleged, or found as a fact, that the plaintiff was deterred from applying for the purchase to Van Rensselaer, by reason of the proffer of defendant to negotiate for him.

The plaintiff, if he recover at all, must recover either on the ground of a breach of the alleged contract to act as plaintiff's agent, and purchase for him the land, or on the ground that a fraud was practiced upon him in the representation that Van Rensselaer had sold the land at $15 an acre.

(*a*) The plaintiff cannot recover, upon the ground that defendant did not act as his agent. Not only for the reason that the fact found varies from that alleged in the complaint considered under the first point, but also because the agreement to act as agent was, both by the proof recited in the finding, the express allegation in the complaint, and by the plaintiff's own oath in the case, entirely *nudum pactum*, of course not obligatory upon defendant.

(*b*) He cannot recover upon the allegation of fraud, in representing that Van Rensselaer had charged $15 an acre for the land. This representation, standing, as it does, alone without any allegation or proof that the plaintiff could have purchased at less than $15 an acre, or that the land was not worth that sum, is totally immaterial. (Story on Sales, §§ 166, 167, p. 145, note *e*.)

"Fraud without damage, or damage without fraud, give no cause of action, but when these two do concur or meet

together, there an action lieth." (See also *Bradley* v. *Bosley*, 1 Barb. Ch. 125.)

But though there is no allegation that the land which the plaintiff received, and has taken a deed of, was worth less than $15 an acre, and the referee neglects to find on that subject at all, the following, amongst other evidence in the case, establishes the value:

Plaintiff testifies: "I told him if it could not be bought for less, I would pay $15 an acre." Again: "I applied at the office here to buy the land, first, a year or two, and last, the winter before. I could have bought it then at $15. Guest told me so, but said it was not for sale."

Guest testifies: "A negotiation was made between Mr. Van Rensselaer and B. F. Wilson; the lands contracted for were reduced below what I would sell for."

McKonkey testifies: "The fifty acre lot of plaintiff's was worth, in July, 1868, $15 an acre, if not more;" and Mc-Roberts, "$15 or $16 an acre."

This evidence is only met by the estimate of the plaintiff himself, that the land was only worth $10, — an estimate proved false by plaintiff's rejection of defendant's offer.

Although the referee finds that "the land was not fixed at any less sum on account of any claim of indebtedness against Van Rensselaer," which was not a matter put in issue, nor claimed anywhere by defendant, except in the language put in his mouth by the oath of plaintiff in his own behalf, yet, it is apparent that some claim, moral if not legal, existed in defendant's favor against Van Rensselaer, in relation to the ditch, which was taken into consideration at the time the sale was negotiated.

Defendant testifies: "He asked $15 an acre. Told him he ought to take my case into consideration, respecting the drain." See also testimony of Van Rensselaer, where he says: "He said he had built the ditch and it had benefited the land, and I ought to pay him for it, not that I had agreed to do it. That was at the time of the negotiation. He urged that upon my consideration when he was trying to buy that lot of me." Guest, the agent of Van Rensselaer, above

quoted, testifies: "The land contracted for was reduced below what I would sell for."

III. The evidence of Sylvia Wilson was clearly inadmissible. For this error a new trial must be granted. (*Myers* v. *Malcolm*, 6 Hill, 292, 296; *Penfield* v. *Carpenter*, 13 Johns. 350; *Worrall* v. *Parmelee*, 1 Comst. 521; Cow. & Hill's Notes, 428, 606, 609; 1 Phil. Ev. 235.)

The Supreme Court is mistaken in the assertion that this evidence "could not possibly have affected the decision of the referee." There was a conflict of evidence as to the agency of defendant. The cause was tried, not upon the allegations in the complaint, but upon a general and not well defined idea of either agency or fraudulent representation. The first is disproved by the fact that the defendant purchased on 19th of May, and did not conclude with plaintiff and receive his money until the 23d. The idea of fraudulent representation was that upon which the plaintiff most relied, and proof that defendant had made the representation which plaintiff claimed was false and fraudulent to the witness, also, cannot be said to be so totally irrelevant that its introduction under objection can be disregarded. (See *Worrall* v. *Parmelee*, *supra*.)

GROVER, J. The referee found in favor of the plaintiff, upon the only material question of fact controverted upon the trial. That question was, whether the defendant agreed to purchase the lands in question of Van Rensselaer, as agent of and for the plaintiff, and received money from the plaintiff for that purpose, as claimed by the plaintiff, or whether the defendant himself agreed to sell such lands to the defendant for fifteen dollars per acre, and procure from Van Rensselaer a deed or contract for the same to the plaintiff for that price, as claimed by the defendant. The testimony upon this question was conflicting, and the conclusion of the referee thereon cannot be disturbed by this court. The legal conclusion drawn by the referee from the facts found was correct. If the defendant agreed to purchase the land as agent for the plaintiff, the former was bound to refund to the latter all the

money he had received, except what he actually paid upon the purchase of the land. An agent is bound to exert his care and skill in making as good a bargain as practicable for his principal, and cannot retain for himself any of the profits or advantages of a contract made by him, without the consent of the principal, given with a full knowledge of all the facts. (Dunlap's Paley's Agency, p. 32, following *Moore* v. *Moore*, 1 Seld. 256.) The judgment of the Supreme Court affirming the judgment of the referee was right, unless the referee erred in receiving or rejecting evidence, having a bearing upon the question of fact litigated by the parties. There was no dispute upon the trial as to the price paid by the defendant to Van Rensselaer for the land; that was ten dollars per acre. The plaintiff was permitted to prove by a witness, that the defendant told her he paid fifteen dollars an acre therefor. This evidence was wholly immaterial upon any of the direct issues of fact litigated by the parties, and although erroneously admitted, could not have worked any injury to the defendant, and would therefore furnish no ground for the reversal of the judgment. But the defendant was introduced as a witness in his own behalf, and gave material evidence in his own favor, which, if fully credited by the referee, must have induced a report in his favor upon the questions of fact. His credibility thus became a material issue, and any evidence erroneously received, tending to impair it, furnished ground for a valid exception. The evidence received in this case, did tend to destroy the credibility of the defendant as a witness. It tended to prove that he had told a falsehood as to the price paid for the land. This may have induced the referee to discredit his testimony; as it appears from the report, he actually did discredit it. The evidence was not introduced to contradict any testimony given by the defendant upon the trial, as he had given no evidence in conflict with it. Its only possible effect was to prove that the defendant had told a falsehood to the witness as to the price paid by him for the land, there being no dispute upon the trial or issue upon the pleadings upon that question. The evidence was clearly incompetent, and we

have seen that it may have produced injury to the defendant. The legal rule is, that where incompetent evidence is received, to which the proper exception is taken, the judgment must be reversed, unless it appears from the case that such evidence could not have injured the party. (*Worrall* v. *Parmelee*, 1 Comst. 519.)

Applying this rule, the judgment must be reversed and a new trial ordered, costs to abide event

Clerke, J. (dissenting). The facts found by the referee are substantially in conformity with the allegations in the complaint. The agency of the defendant, the service which he was to perform, the *maximum* of the price which he was to give for the land, the actual price for which it was sold, the false representation that he had purchased it at $15 an acre, when in fact he had purchased it at $10 an acre, the amount which the plaintiff paid for the land in consequence of this false representation, being $757.05 ($242.35 more than the actual purchase-money), and the retention, unjustly, by the defendant, of this excess, are facts alike found by the referee, and alleged in the complaint.

Evidence was before the referee, tending to prove these facts; and we cannot interfere with his findings, even if we supposed them erroneous.

The referee committed no error in admitting the testimony of Sylvia Wilson. Her testimony showed the *animus* of the defendant; besides, it tended to show that the testimony of the plaintiff to the same effect, was true.

The judgment should be affirmed, with costs.

Judgment reversed.